Before we start the clock, I just have a couple of questions. Are you Ms. O'Donnell? I am. All right. I do have a question. On here we have you designated as a DAG. I am. But you're not appearing on behalf of the Attorney General's Office. I am not. Okay, so it would seem that some, if we put this as a DAG, it sort of seems like the Attorney General is making an appearance. On all my briefs, I have given my home address. It's a PACER issue. I am unable to have a separate ID. I only can have one ID. I tried to do that, and unfortunately I can't. So I'm wondering how we can properly designate this on the calendar, just from the standpoint, is that going to, if we change that, is that if we were to change it to Esquire, you're representing yourself and the company. Yes. Okay. So we should just put Jane O'Donnell, Esquire? Correct, as I have on the briefs. Okay. All right. I've tried to stick to my name. Right. I'm not implying anything, but I noticed that, and I thought, well, I don't think the Attorney General's Office is making an appearance. No. My client has a pool for attorney and vice versa. Okay. All right. That being said, then we'll start, and you have 15 minutes, and so if you state your name for the record and your appearance and proceed. Thank you. Yes. Jane O'Donnell, and I'm representing both appellants in the case. And I will be very brief, and we would like to reserve five minutes in response, if necessary, because I've said it in the briefs, and my main emphasis has been that there was no breach of contract claim. There was no damages. So this, my claim, is not subject to subordination. 510B says you subordinate when there's a decision. There was no rescission, or it's a claim for damages. There is no claim for damages. The client is subject to damages. I'm sorry. Why isn't this basically a breach of contract claim? Do you have a right to have the LLC, is it, to buy? And they agreed to do so. Right. And then they failed to pay you the money, so you sued them for breach of obligation that they owed under the operating agreement, right? No, I didn't, Your Honor. We couldn't agree on an appraisal, the fair market value. So we both jointly retained an appraiser, and he arrived at a value, and Tristar did not like that value. No, I know exactly what happened down to the minute detail, but I'm just saying, at the end of the day, when they failed to pay you the money that, even after the arbitrator said you must pay this money, you ended up getting, in effect, a judgment for their breach of the obligation under the operating agreement or LLC agreement, whatever it was, to pay you the money. No, it was not an arbitration for breach of contract. The arbitration was an appraisal proceeding. That's all it was. I got it. So let's just say the bankruptcy hadn't happened, then all that the arbitration was was an appraisal, and you wouldn't have executed on that judgment if there were money to go after? No, I would, Your Honor, and I did. Well, then it's a judgment. Then it's a judgment. But a judgment is not synonymous with a breach or some kind of wrongful act. I allege no wrongful act. I did not allege breach of contract. The genesis of this breach of contract was erroneously carried through from the bankruptcy court forward. There was no breach of contract claim in the arbitration. There was testimony about the value of the building. Let me ask you if, let's say that there had been a breach of contract. Let's say you had gone to them and said, hey, I'm exercising my right to have you buy back. And they just said, go pound sand. We're not buying anything. And you said, oh, okay, well, I'm going to court. I'm going to see you. And you won the case. That would be a breach of contract claim. And that would have to be subordinated? No, and I'll tell you why. Because I have long since been an equity holder. And the situation you're describing is Birch v. Gannon. In re cybersight. And that gentleman, I believe under an employment agreement, had a right to be paid for his interest that he was promised. And he had to get a judgment to enforce that. And the Delaware court said, no, that shouldn't be subordinated because he's long gone. All the cases about subordination talk about equity holders as of the time of the bankruptcy. They talk about a wrongful tort alleged resulting in damages. But more importantly, the claimants or plaintiffs had an equity interest at the time of the bankruptcy or had a claim that was pending. That you didn't buy my stock, that you committed some fraud or tort. There has to be a breaking point between when you're no longer a part of the membership or the corporation, and how long does that period of time have to be? I withdrew in 2008 in writing for the operating agreement under California Corporations Code. When I withdrew, I'm no longer a member. I had not been a member, and in 2008 Tristar agreed to purchase my membership interest. They made partial payment. They admitted... So am I hearing that you're saying the key fact in your mind is that you already had this judgment before the... I did not. I did not have the judgment... ...in hand before the company or the LLC filed for bankruptcy. That's the key fact in your mind? Right. I was the target of the bankruptcy. I'll move on from there. No, no. I'm just... So that's, in your mind, that is what... Because you started out by saying, well, this isn't really breach of contract, and it sounds like that doesn't matter. What in your mind matters is that you had a judgment pre-petition. No. It matters to me that this was not a forced sale. This was a disagreement over the purchase price. If I agreed to buy your house for fair market value and we can't agree on the price, it's not a forced sale when we agreed to have a neutral person determine that. Courts do that all the time. They determine the value of property once the sale is agreed upon, but that's not damages. But I think it wasn't the issue that there was an agreement to purchase, correct? There was an agreement they would purchase your equity interest, correct? Right. For fair market value. Fair market value. And then there was a disagreement as to what the fair market value was, correct? Right. And under the operating agreement, what you then would do is there was an appraisal process, and then you could arbitrate it. Because there was a disagreement. Because they owed you money, and they were not willing to pay you what you thought you deserved. True. So didn't they breach the agreement then between you two? Okay, let me ask you this. You don't get to ask questions. It's a rhetorical, it's kind of an answer. Okay, if you want to answer, go ahead. If there's a note, let's assume I had a note, and you won't pay on my note, and I have to go to court to enforce a payment on my note, is that a judgment for damages? Wouldn't that be an action for breach of the agreement to pay the note? No. It's not an action for damages. And I say the same. They wouldn't pay the purchase price, the fair market value. Well, see, I think you essentially want to be put in the position as if they had agreed to everything and you'd gotten your money before this whole thing started, and then you wouldn't be subject to, that there wouldn't be no discussion of 510B. But we can't go back there. Why not? Of course, look behind judgments. Well, there's the word judgment again. It ended up as a judgment. The appraised value was the judgment. I'd like to go back, if I may, to the point you raised. So yeah, we understand your argument on damages. I think, I'll speak personally, I think your better argument is on the timing. Because as you pointed out, that at the time this whole thing went down, the bankruptcy was declared, you were no longer an equity holder in the company. Isn't that correct? True. Okay. You held something other than equity. I held a judgment. A judgment. So then the question for us is, under 510B, where does that rank? Is it the same as a stockholder in the company? Or is it ranked the same as a plumber who did work for the company and didn't get their bills paid? Under the case law, it doesn't matter. There have been equity partners that have, and they've been managing partners, they've held substantial interest, and they've traded in, redeemed their stock, and they are not considered, are subject to subordination. The other point here, Your Honor, is that the purpose of subordination is to protect other creditors. Every creditor in this bankruptcy, which is now closed, has been paid. The only creditor that didn't get paid is me. I made a motion to the court early on to have a stay as to the remaining proceeds from the sale of the property, which are substantial. I do not know the exact figure, not enough to pay my judgment, but a couple hundred thousand dollars, and that's why I said from day one this is a targeted bad faith bankruptcy to deny me my purchase price for my interest. Distributions were made to the remaining LLC members after I withdrew. Well, why don't you consider reserving? You're at five minutes, basically, and then I will ask them a question about the other cash distributions they made to other investors, and then you'll have a time to respond. Yes, Your Honor. Thank you. Thank you. Good morning. Good morning, Your Honors. I am Landsberg of Landsberg & Associates on behalf of the Dehner & Appeli Tristar Esperanza Properties. Well, let me start there with that. Ms. O'Donnell alleges that after she became a creditor in 2008, Tristar made substantial cash distributions to other investors but not to her. How much was distributed to those investors, and why isn't Tristar's failure to include Ms. O'Donnell in that distribution inconsistent with its assertion that in this action that she seeks to recover an equity interest? Your Honor, with regard to the dollars that were distributed, I think it might have been below six figures in the distributions to the other members of the LLC. I don't have the exact figure, Your Honor, if it's not set forth in the brief. That's number one. Number two, I think that's somewhat irrelevant, though, because I think what's happening is we're starting to mix issues and sort of blend together. Well, so did everyone else get paid except her? No, not at all. Not at all. And I don't understand that because I don't recall distributions being made to equity. What Ms. O'Donnell is talking about is distributions made prior to the bankruptcy proceeding. Money is set aside dealing with this issue right now to find out what the final resolution is going to be. Other creditors have been paid, but no distribution has been made to Ms. O'Donnell and other equity members until we have a dispositive decision, Your Honor. The issue, though, Your Honor, is something a little bit different, simply because 510B deals with a specific issue, damages arising from the purchase or sale of a security. Many of the cases in the Ninth Circuit say you look beyond the terms of the judgment to see what the basis was for. Counsel's even said that to the Court just a moment ago, Your Honor. That's what happened with Orange County Nursery. If the Court recalls, one of the cases that Ms. O'Donnell was relying on was Orange County Nursery, one because at the time it was a very favorable opinion for her. And last year, in 2014, the BAP or the District Court, I believe, actually reversed that decision and now is it a favorable decision to us. And it's very analogous to us. The judgment that was obtained, Your Honor, was based on damages due to the purchase and sale of a security. That's it. And it should be that simple. And the reason being, Your Honor, is it doesn't matter as to the timing, as the Court has asked questions about the timing and whether or not you have a judgment and you're not an equity holder at the time of the bankruptcy. The issue is, if that were the case, you could obliterate the absolute priority rule. You are now taking equity members who are converting their interest to be general unsecured creditors and reprioritizing and recharacterizing these equity holders as being senior unsecured creditors, increasing their distribution. They are there and creditors are there based on a certain position. Creditors take a risk of the viability of a company going forward. Equity takes into consideration a few things. One, not just the risk, but the actual appreciation to enjoy the benefits or the losses that are incurred by the company. That's what equity does. 510B, Your Honor, other than absolute priority rule, if you were to say that you have to have your equity interest at the time of the filing, it sort of confuses me. I will say that because damages wouldn't make any sense, Your Honor, because damages typically arise from a dispute. We have a dispute here. Counsel is arguing that all this was was a finding as a result of an appraisal that was consistent with the terms of the operating agreement. If that were the case, because I was really thinking about this last night of what could this be if it's not damages, I would think if counsel were to be correct in her analysis, I would think the arbitrator or some authority would have to have a binding of value and say, here you go, your interest is worth $300,000, and it would stop there. And then thereafter, you'd have to then sue on a breach of contract and say you haven't paid me, and then basically enter a judgment. That didn't happen here. The arbitrator was quite clear. It doesn't really matter if it was actually characterized or fashioned as a breach of contract action. It was a breach of contract. The parties did not perform under the terms of the operating agreement. As a result, the arbitration had to be filed. The arbitrator found that TriStar was in breach of the operating agreement. It found damages, and it specifically said damages in a certain amount in addition to attorney's fees, which is issued under the operating agreement when you are the prevailing party. Damages, attorney's fees, interest, and cost. To me, it sounds like a judgment. To me, it sounds like damages. If you don't look at it from this perspective, and you want to take a look at it from, let's say, the Delaware courts that say promissory note, this was not a fixed rate of return, your honor. What happened is, in the promissory note cases, which I believe are not appropriate, and it's just poor decisions from the Delaware courts, your honor, you agreed to a sum certain for the purchase of shares. You agreed it's not damages, and I can see where they get away from the term damages, but the problem you run into is drawing a distinction, allowing parties and attorneys and creative lawyers, your honor, to basically sit down and counsel their clients that when you're about to enter into a bankruptcy proceeding, you can re-characterize your equity and not deal with the new value and absolute priority rule and make yourself a general unsecured creditor. That can't be what Congress intended when it put together 510B. Counsel, let me ask you this. Let's say I'm with you on the damages issue, I'm with you on the arising, hypothetically, rising under. Okay. One question is, if I were to go your way, something I'm struggling with is how long? So, for example, if there was a case where 25 years ago someone converted equity into this type of agreement as we had here, and then 25 years later there's a bankruptcy, would that still, in your view, still be subordinated? Or is there some temporal period where, I think one of the phrases used in the briefing was too old and cold. Is there, I would like your thoughts on that. When you start looking at time, okay, whether it's an antiquated judgment and if it goes back 25 years, the difficulty I think you start running into is, you know, when you look at time, is you have to draw a line and say, okay, this may have been damages. This judgment from 25 years ago may have been damages arising from the purchase and sale of security. But in addition to that, the courts, I believe, also look at that they're looking to avoid equity re-characterizing their debt. And when it's done 25 years ago, when you have a bankruptcy now, I think the difficulty is, and the courts are going to have a difficult time with, how does it fall into trying to re-characterize their debt from being equity to damages to a general problem? Well, the BAT panel, the BAT, like, suggested that old and cold transformation of equity into debt might not be subordinated under 510B. Does TriStar have a position on whether old and cold transformation might be exempt or does it argue that under any event, Ms. O'Donnell's claim was not old and cold? Your Honor, I think that would be subject to case law. And the reason being is that when I look at this, if I look at the specific wording of the language, if it says damages arising from the purchase and sale of the security, I don't care when the judgment was entered. If it's consistent with the terms of that statute, then everybody should fall consistent with the terms of that statute and be subordinated. Well, let's just say, though, that as what Judge Owens was talking about, let's say we think that there might be something to old and cold or there might, that might be some sort of exemption. Is this old and cold? This is not old and cold, Your Honor, because this was actually litigated up to the date of the bankruptcy. And I can explain. A demand was made when notice of withdrawal member pursuant to the terms of 8.1 of the operating agreement was made in 2008. In 2009, certain things transpired. In 2010, the arbitration award was entered and she entered a judgment. Subsequent to that period of time, the parties still tried to negotiate a deal. Okay? It's not like this was old and cold and sitting around for a long period of time. They tried to negotiate a deal. The problem, and what's really not before the court, is the basis of the arbitrator's award. If you have a $3 million piece of property with a $2.7 million lien against it and you're taking that asset, the court did not take into consideration or the arbitrator did not take into consideration the debt against the property. It's not just simply, because if you were to do that, you'd be left with maybe $30,000, not the $399,000. The issue we have now in a situation like this is all the creditors lose their priority and have to distribute and are diluted as a result of this judgment. The reason we filed, Your Honor, is because there was post-judgment work and an order entered assigning the rents from this property to Ms. O'Donnell, regardless of whether or not there's a secured creditor and regardless of whether or not a monthly mortgage payment has to be made. I don't believe that this is the intended consequence of somebody who's just a creditor, somebody whose equity shouldn't be put in this position to be able to recharacterize their debt, let the other creditors who are truly creditors suffer as a result of recharacterization of debt. This is not old and cold, Your Honor. This is current. Okay. You still have time, but we don't have any additional questions. Okay. I'm good, Your Honor. Thank you. I just asked that the court affirm the ruling of the lower court. Thank you. Thank you. Thank you. Your Honors, I would like to categorically refute that there were any negotiations post-judgment from day one, except for the initial payment, Tristar refused to pay me a nickel. I was personally there, so I know. I instituted post-judgment proceedings because I had to. There was no offer, nothing. So, I was old and cold for a very long time, if we want to use that test. Let me ask you about that, counsel. Let's assume that you're right. Let's assume that it was... Let's make this easier. Let's assume it was 15 years. Okay. Okay. How would... I'm kind of rubbing my hair because I'm trying to figure out what to do. How would courts administer such a rule? This is... I appreciate the equitable feeling of old and cold, but from an administration standpoint, you've got a hundred creditors, a hundred people who converted their stock to some form of promissory note or debt or whatever it is. Would a bankruptcy court have to go through and analyze each one of those to determine, well, that one's old and cold, but maybe that one's not? How would that work? I agree that... I argue that old and cold is a subjective test. The correct test, and which the Orange County nursery case said that cited in other cases, is you determine the nature of the debt or claim as of the time of the filing of the bankruptcy. And if it is a judgment, which apparently this court feels is for damages, you can look behind the judgment to see the nature of the case. And even if you did that here and decided still that it's breach of contract, it was fixed and over by the time of the bankruptcy. But for example, if we had an MCI bankruptcy situation, a massive bankruptcy, or an Enron bankruptcy situation, where you had potentially thousands of people who had stock and maybe Enron last minute offered some stock buyback program, we would have to, or the bankruptcy court would have to go through on each one of those investors and determine, well, for that investor who has $6,000 of stock, who did have $6,000 of stock, and that's now been converted to some other instrument, did they rely, or was it old and cold? And you'd have to do a party by party, or a claimant by claimant analysis. No, you determine the finality and the nature of their ownership interest as of the time of the debtor's bankruptcy filing. No, I'm saying if we adopted the old and cold. Well, that's why it can't work. So you agree, then, old and cold we should not do? Let me, here's the thing. It's subjective. Okay, so if we disagree with you on damages and a rising, one possible out for you, a win for you, would be if we were to adopt old and cold. And we could say, well, then we're going to look and see whether your transaction was old and cold. But you're saying we shouldn't do that. I think it's a subjective test. I mean, if that's what you want to give me, my victory, I do agree that it's a subjective test. But the correct test is to look at the nature of my ownership interest as of the bankruptcy filing, which has done in the past. And by that count, I was long gone. This has driven me crazy, and I have to say this, I have a little bit of time left, about this arbitration award. Consistently, counsel for TriStar has argued that the arbitrator did not take into account the mortgage. I devoted a whole section in my brief to the calculations, and this still does not dissuade counsel. If the court has any questions about the propriety of the calculation, I would like to know. It doesn't matter. I mean, from my standpoint, I will just tell you, I did see what you said in the reply brief, and yeah, obviously counsel still disagrees with it, but that ends up being totally irrelevant in my view to the legal issue that we were asked to decide. So, I agree. And I have one more thing, because I have a little bit of time. If the court would look to the Montgomery Ward holding corporation case. And in that case, in the, they wanted to re-characterize a note when the claimant went to enforce the note, as damages. And the Third Circuit said, to do so would lead to the untenable result that any claim, based on a default of a corporate bond or debenture, or in my case, an obligation to pay, would lead to subordination. Here, the operating agreement was followed. An arbitration for the correct amount was determined, and Tristar was obligated to pay. And it should not be subordinated. Alright, thank you both for your arguments on this matter. This case will stand submitted in courts in recess until tomorrow at 9 o'clock.
judges: Callahan, Watford, Owens